UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EMPLOYEE PAINTERS' TRUST, | Case No. 2:19-CV-00912-GMN-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| BRANDON S. CLIFTON, an individual; and KIMBERLY A. COMINSKY, an individual; | |
| Defendants. | |

Before the Court is Plaintiff's Motion for Default Judgment (the "Motion") seeking a monetary judgment against Defendants Brandon S. Clifton ("Clifton") and Kimberly A. Cominsky ("Cominsky" and, together with Clifton, "Defendants"). ECF No. 11. The Motion was filed on August 30, 2019. No response to the Motion was filed.

**I.  BACKGROUND**

This case commenced on May 29, 2019 when Plaintiff the Employee Painters' Trust ("Plaintiff" or the "Trust") filed its Complaint against Defendants asserting seven claims for relief. ECF No. 1. These claims include Unjust Enrichment Under ERISA, Fraud, Fraudulent Misrepresentation, Fraudulent Concealment, Negligent Misrepresentation, Conversion, and Unjust Enrichment. *Id*. Clifton was named as a defendant because, as an employee of certain employers, he was entitled to participate in a health and welfare plan administered by the Trust pursuant to the Employee Retirement Income Security Act ("ERISA"). Clifton's dependents (also referred to as beneficiaries) were entitled to participate in health and welfare benefits under circumstances specified in health and welfare plan documents.

Clifton married Cominsky on or about February 4, 2004. Defendants were divorced in September 2012. The Trust admits that Clifton notified the Trust of his divorce from Cominsky in March 2017. ECF No. 11 at 3:11-13; 4:2-3. In fact, while Clifton apparently did not submit documentation of the divorce, the Trust admits that, in March 2017, Clifton advised the Trust that

1

he and Cominsky were legally divorced "through a Decree of Divorce" entered on September 14, 2012. *Id*. at 4:2-4.

Despite the March 2017 notice, sometime in early 2018 (the exact date is not provided by the Trust), Cominsky contacted the Trust's third party administrator seeking to confirm her continued coverage eligibility under the Plan, as well as new member cards. The Trust also, alternately, states that:

(1) "Cominsky received health benefits from the Trust for the period February 2004 through August 2018" (*id*. at 3:18-19);
(2) it "paid $37,828.12 in medical and prescription benefits" for Cominsky for the period "December 2016 until July 2017" (*id*. at 3:24-25); and
(3) it paid "$37,828.12 in benefits for Ms. Cominsky from approximately October 2012, forward for which she was ineligible." ECF No. 11-1 (Declaration of Connie Callahan) ¶ 21.

A claims summary attached as Exhibit 2 to Plaintiff's Motion definitively shows that the claims for which the Trust seeks reimbursement arose from invoices dated September 22, 2017 through July 9, 2018. These dates are confirmed by Plaintiff's Exhibit 4. The amounts on Plaintiff's Exhibits 2 and 4 each total $37,828.12.

The Trust attaches three versions of the Employee Painters' Trust Health and Welfare Plan (each the "H & W Plan" or the "Plan") to its Motion. Exhibits 1-A, 1-B, and 1-C. On page 18 of the 2007 Plan, it states "lawful spouse[s]" are eligible dependents under the Plan. Ex. 1-A at 18. Page 20 of the 2007 Plan lists those dependents not eligible for benefits including "divorced spouse[s]." *Id*. at 20. On page 20 it also states, *inter alia*, that "[a] dependent's insurance will end at midnight on the earliest of: . . . the last day of the Plan month the dependent is no longer eligible." *Id*. Finally, on page 59 of the 2007 Plan it states that divorce is a qualifying event for COBRA and, in order to be eligible for COBRA, the Plan participant or dependent has the responsibility to notify the Trust of the loss of coverage eligibility in writing within 60 days of the qualifying event. *Id*. at 59.[1] The 2013 Plan identifies the same basic definitions of eligibility for lawful spouses, loss of coverage based on divorce, and when a dependent's insurance will end. Ex. 1-B at 6-7.

---

[1] To the extent the Trust relies on the notice requirements for COBRA coverage, that reliance is misplaced as COBRA is not at issue in this case. Rather, what is at issue is whether health insurance paid on behalf of a divorced spouse, for whom COBRA coverage was *not* sought, must be repaid by the plan participant or the ineligible former spouse despite oral notice of the divorce that occurred before the amounts at issued were paid by the Trust.

2

The 2018 Plan, effective in August 2018, includes the same lawful spouse eligibility, loss of eligibility, and timing applicable to when coverage ends as the 2007 and 2013 Plans. Ex. 1-C at 12 and 13. However, for the first time, this Plan includes a provision titled "Your Obligation to Notify the Plan of Changes in Dependent Status." *Id*. at 13. The "Obligation" in the 2018 Plan document states that "[y]ou must notify the Trust Office in writing if there is a change in the qualifying status of any of your dependents within 60 days of the date on which the change occurs." *Id*. at 13. This provision is conspicuously absent from the 2007 and 2013 Plans submitted by Plaintiff.

Neither Clifton nor Cominsky have appeared in this matter despite effective service. ECF Nos. 4 and 5. Thus, obviously, neither Defendant offers a reason for their failure to notify the Trust of their divorce at any time before March 2017. The Trust also offers no facts evidencing that it received information regarding the reason for Defendants' failure to provide notification of the event disqualifying Cominsky from continued eligibility for benefits prior to March 2017. Importantly, however, the Trust provides no document or authority for asserting that Clifton's oral notice to the Trust in March 2017 was insufficient under the terms of the then-effective 2013 Plan (Plaintiff's Ex. 1-B), which is silent with respect to what constitutes effective notice of a change in eligibility (distinct from what is required when COBRA coverage is sought). Plaintiff offers no explanation for why, once notice of Clifton's divorce from Cominsky was received in March 2017, the Plan paid any benefits on behalf of Cominsky.[2]

The pending Motion seeks $37,828.12 in medical benefits paid on behalf of Cominsky, all of which were incurred after Clifton provided oral notice of his divorce and the divorce date to the Trust. ECF No. 11 at 4:2-3 ("On or about March 2017, Mr. Clifton ***informed the Trust*** that he and Ms. Cominsky had been legally divorced, through a Decree of Divorce which was entered on September 14, 2012, in the Eighth Judicial District Court, Family Division, Clark County, Nevada.") (emphasis added).[3]

---

[2] Although notice did not occur within 60 days of the change in status (as required by Plaintiff's Exhibit 1-B), the notice did occur before the payments made by the Trust on behalf of Cominsky.

[3] Despite this plain representation in its Motion, the Declaration of Connie Callahan (ECF 11-1) states that "[n]either the Plan nor the third-party administrator have any record of being notified *in writing* of Mr. Clifton's divorce … until August 2018." ECF No. 11-1 ¶ 16 (emphasis added). This may be true, however, there is no provision requiring written notice of a "change in qualifying status" in the applicable 2013 Plan.

3

## II.     ANALYSIS

Rule 55(b)(2) of the Federal Rules of Civil Procedure grants the Court the authority to enter default judgment in a case in which the Clerk of Court previously entered default based upon a defendant's failure to appear and defend. Here, Clifton was served with the Trust's Complaint on June 1, 2019. ECF No. 4. Cominsky was served with the Complaint on June 20, 2019. ECF No. 5. Clerk's Default was entered as to Clifton on June 26, 2019, and as to Cominsky on August 2, 2019. ECF Nos. 7 and 9 respectively. Neither Defendant made any appearance or attempt to answer the Complaint at any time before the date of this Order.

Failure to timely answer a properly served complaint is an appropriate basis upon which entry of default judgment may lie. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). However, this does not automatically entitle Plaintiff's "to a court-ordered judgment." *PepsiCo. Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002). The Court must accept all well-pleaded facts in Plaintiff's Complaint as true; however, the Court is not required to consider admitted any conclusions of law or facts that fail the well-pleaded standard. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, the Court need not accept the facts establishing the amount of damages as true simply based on the pleadings. *Geddes v. United Financial Goup*, 559 F.2d 557, 560 (9th Cir. 1977).

Courts generally disfavor default judgments because "cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Thus, there are seven factors that a lower court, in its discretion, may consider when deciding whether to grant default judgment. *Id*. at 1471-72 (citing 6 MOORE'S FEDERAL PRACTICE § 55-05, at 55-24 to 55-26). These factors include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*.

In addition to these seven factors, the Court has the duty to ensure Defendants were properly served and are properly before the Court. *DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 877-

78 (N.D. Cal. 2012). Here, before turning to the seven *Eitel* factors, the Court finds that summonses were properly issued, Defendants were properly served, Defendants failed to answer the Complaint, personal jurisdiction is properly exercised over these Defendants, and that default of Defendants was properly entered by the Clerk of Court (ECF Nos. 1, 3, 4, 5, 7, and 9).

Turning to the *Eitel* factors, the first factor requires consideration of whether the Trust will suffer prejudice if default judgment is not entered. As stated, the Clerk of Court properly entered default against Defendants who failed to appear or otherwise respond to the Trust's Complaint. The Trust served the Motion for Default Judgment on Defendants by mail at their last known addresses and, still, there has been no response from Defendants. Under these circumstances, the Trust has no means to litigate its claims against Defendants other than through the present method. For this reason, the Court finds the first *Eitel* factor favors entry of default judgment.

The second and third factors require the Court to consider the merits of the Trust's claim and the sufficiency of its Complaint. Under the well-pleaded complaint rule, the Trust sufficiently states claims for recover of damages from Defendants. Fed. R. Civ. P. 8. However, the merits of the Trust's claims (the third *Eitel* factor) is in question based upon the possibility of a dispute concerning a material fact—the fifth *Eitel* factor the Court must consider. That is, the Trust pleads both that "[b]etween September 2012 through August 2018, Defendant Clifton either made representations to the Trust that Cominsky was still his lawful spouse or failed to inform the Trust of a change in marital status" while also stating that "[i]n March 2017, Defendant Clifton informed the Trust that Clifton and Cominsky had been legally divorced, but failed to submit required written documentation of the divorce." ECF No. 1 ¶¶19 and 21. The Trust's Motion attaches the 2013 H & W Plan, which does not require a plan participant or beneficiary to submit written documentation of a divorce in order to provide adequate (albeit, here, untimely) notice of divorce or other event disqualifying an individual from continued coverage. ECF No. 11, Ex. 1-B at 7 (compare ECF No. 11, Ex. 1-C at 13, effective August 2018, after all benefits at issue were paid). Despite the admitted March 2017 notice (before any of the amount was paid by the Trust on behalf of Cominsky– (Plaintiff's Exs. 2 and 4)), the Trust's Complaint repeatedly concludes that Defendants' failure to notify the Trust of the divorce resulted in payment of benefits to which Cominsky was not entitled

5

and, therefore, are amounts Defendants must pay back to the Trust. ECF No. 1 ¶¶ 34-38; 55; 64-66; 75-76; 88-89; 94-96; 100.

The statutes governing ERISA establish that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The plan instrument establishes "the allocation of responsibilities for the operation and administration of the plan," 29 U.S.C. § 1102(b)(2), and the plan fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." *Id.* § 1104(a)(1)(D); *see also Hunt v. Hawthorne Assocs., Inc.,* 119 F.3d 888, 891 (11th Cir.1997) ("The cornerstone of an ERISA plan is the written instrument . . ."). While the Ninth Circuit also makes clear that a defendant cannot defeat claims made by an ERISA-governed plan through an equitable estoppel defense (not at issue here) if that defense would result in recovery that would contradict written plan provisions,[4] the Trust does not address the conflicting facts and plan provision that are actually at issue in this case.

Therefore, and based on the foregoing, the Court will order the Trust to further brief the issue regarding the sufficiency of Defendant Clifton's March 2017 notice to the Trust under the 2013 Plan terms, which do not require written notice of a change in eligibility. The Trust must address why (1) the notice, as stated on pages 3 and 4 of the Trust's Motion, was not sufficient under the applicable Plan, (2) having received notice in March 2017, the Trust nonetheless paid $37,828.12 in medical bills on behalf of Cominsky for the period beginning on September 22, 2017, and ending on July 9, 2018, and (3) if the payments were Trust error, Defendants, either individually or collectively, should be liable to the Trust for the amount claimed in the Motion.

---

[4] *Davidian v. S. Cal. Meat Cutters Union & Food Emps. Benefit Fund,* 859 F.2d 134, 136 (9th Cir.1988); *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) (plaintiff may not bring an equitable estoppel claim that "would result in a payment of benefits that would be inconsistent with the written plan," or would, as a practical matter, result in an amendment or modification of a plan, because such a result "would contradict the writing and amendment requirements of 29 U.S.C. §§ 1102(a)(1) and (b)(3)").

**III. ORDER**

IT IS HEREBY ORDERED that Plaintiff Employee Painters' Trust shall submit supplemental briefing in support of its Motion for Default Judgment in accordance with the issues discussed above no later than 5 p.m. on January 10, 2020.

DATED: December 30, 2019

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE