UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EMPLOYEE PAINTERS' TRUST,<br><br>                  Plaintiff,<br><br>v.<br><br>BRANDON S. CLIFTON, an individual; and KIMBERLY A. COMINSKY, an individual;<br><br>                  Defendants. | Case No. 2:19-CV-00912-GMN-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>**Re: ECF No. 11**<br>**Motion for Default Judgment** |

Before the Court is Plaintiff Employee Painters' Trust's ("Plaintiff" or the "Trust") Motion for Default Judgment (the "Motion") seeking a monetary judgment against Defendants Brandon S. Clifton ("Clifton") and Kimberly A. Cominsky ("Cominsky" and, together with Clifton, "Defendants"). ECF No. 11. The Motion was filed on August 30, 2019. No response to the Motion was filed. On December 30, 2019, the Court ordered further briefing from Plaintiff, which Plaintiff filed on January 10, 2020. ECF Nos. 12 and 13. This Report and Recommendation follows.

**I.     BACKGROUND**

The facts underlying this case have not changed since the Court issued its December 30, 2019 Order seeking supplemental briefing. Thus, except as necessary, the facts as previously stated in the December 30, 2019 Order, are not restated here.

**II.    ANALYSIS**

    A.     <u>The Default Judgment Standard</u>.

Rule 55(b) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgment when the Clerk of Court previously entered default based upon a defendant's failure to answer and defend. *OCWEN Loan Servicing, LLC v. Operture, Inc.*, Case No. 17-cv-01026, 2018 WL 1100904, at *1 (D. Nev. February 12, 2018). Here, Clifton was served with the Trust's Complaint on June 1, 2019. ECF No. 4. Cominsky was served with the Complaint on June 20,

1

2019. ECF No. 5. Neither Defendant made an appearance or attempt to respond to Plaintiff's Complaint. The Clerk's Default was entered as to Clifton on June 26, 2019, and on August 2, 2019, as to Cominsky. ECF Nos. 7 and 9 respectively.

Failure to timely answer a properly served complaint is an appropriate basis upon which entry of default judgment may lie. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). This, however, does not automatically entitle Plaintiff "to a court-ordered judgment." *PepsiCo. Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002). Although, the Court must accept all well-pleaded facts in Plaintiff's Complaint as true, the Court is not required to consider any conclusions of law or facts that fail the well-pleaded standard. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, the Court need not accept the facts establishing the amount of damages as true simply based on the pleadings. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

Courts generally disfavor default judgments because "cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Thus, there are seven factors that a lower court, in its discretion, may generally consider when deciding whether to grant default judgment. *Id.* at 1471-72 (citing 6 MOORE'S FEDERAL PRACTICE § 55-05, at 55-24 to 55-26). These factors include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*[1]

B.  Application of the *Eitel* Factors to this Case.

1.  *Factor One – The Possibility of Prejudice to the Plaintiff.*

As stated, the Clerk of Court properly entered default against Defendants who failed to appear or respond to the Trust's Complaint. The Trust served the Motion for Default Judgment on

---

[1] In addition to these seven factors, the Court has the duty to ensure Defendants were properly served and are properly before the Court. *DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 877-78 (N.D. Cal. 2012). Here, as stated, the Court finds that summonses were properly issued, Defendants were properly served, Defendants failed to answer the Complaint, personal jurisdiction is properly exercised over these Defendants, and that default of Defendants was properly entered by the Clerk of Court (ECF Nos. 3, 4, 5, 7, and 9).

Defendants by mail at their last known addresses and, still, there has been no response from Defendants. Under these circumstances, the Trust has no means to litigate its claims against Defendants other than through the present method. For this reason, the Court finds the first *Eitel* factor favors entry of default judgment.

> 2. *Factors Two, Three, and Five – The Merits of Plaintiff's Substantive Claim, the Sufficiency of the Complaint, and the Possibility of a Question of Material Fact.*

Under the well-pleaded complaint rule, the Trust sufficiently states claims for recovery of damages from Defendants. Fed. R. Civ. P. 8. Thus, the third *Eitel* factor favors entry of default judgment.

The merits of the Trust's claims (the second *Eitel* factor), when considered together with the possibility of questions of material fact (the fifth *Eitel* factor), caused the Court to request supplemental briefing from the Trust. Specifically, a review of Plaintiff's Complaint shows the Trust pled both that "[b]etween September 2012 through August 2018, Defendant Clifton either made representations to the Trust that Cominsky was still his lawful spouse or failed to inform the Trust of a change in marital status" and that "[i]n March 2017, Defendant Clifton informed the Trust that Clifton and Cominsky had been legally divorced, but failed to submit required written documentation of the divorce." ECF No. 1 ¶¶ 19 and 21. These allegations appeared to conflict and create a potential question of material fact.

Added to this is the fact that unlike the 2018 Health and Welfare Plan document (ECF No. 11-5 at 5) effective after the benefits at issue were paid, the applicable 2013 Health and Welfare Plan does not include a provision requiring participants or beneficiaries to submit written notice of, *inter alia*, a divorce in order to provide adequate notice of an event disqualifying an individual from continued benefit coverage. *Compare* ECF No. 11-5 at 5 *and* ECF No. 11-4. Plaintiff's supplemental briefing addresses this conflict and the overall concerns raised by the Court.

3

As stated by the Trust, and confirmed by the Court, a benefit determination made by an ERISA plan is reviewed for abuse of discretion. *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005).[2] And, as the Ninth Circuit states in *Boyd*, "[i]n the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion. . . . An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Id*. (citations omitted). In this case, the Trust neither rendered a decision without an explanation nor relied on a clearly erroneous finding of fact.

However, with respect to the Trust construing the 2013 Health and Welfare Plan in a manner that conflicts with the plain language of the Plan, the Trust now argues that the evidence presented with its Supplemental Brief shows this did not occur. The Court takes this evidence under consideration and is further informed by the Ninth Circuit's statement that courts "will uphold the decision of an ERISA plan administrator if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Boyd*, 410 F.3d at 1178 (citation omitted).

The Trust states that "the Trustees have interpreted the Plan to require written notice of changes to a dependent's eligibility status in all cases, not just in the context of COBRA benefits." ECF No. 13 at 4. The Trust further argues that the Trustees have read and interpreted the notice requirements for a change in beneficiary status in harmony with the COBRA provision requiring written notice, for *effective* notice, of eligibility status to occur. *Id*. While Plaintiff says the Court "misapprehends" how the COBRA notice and eligibility status notice are "inextricably intertwined," the Trust admits that Plan participants and beneficiaries "were not clearly understanding" that written notice of an eligibility status change was required based on language pertaining to COBRA. *Id*. at 9. This led the Trust to clarify the 2018 Plan document "and make clear that participants must inform the Trust in writing of events bearing on dependent eligibility." *Id*. In sum, while the Trust believed that the language in the 2007 and, most importantly, in the 2013 applicable Plan document

---

[2] When an ERISA plan that confers discretion upon a plan administrator to construe the terms of an ERISA plan, the administrator's construction is reviewed for abuse of discretion. *Abaite v. Alta Health & Life Ins. Co.*, 458 F.3d 995-962-65 (9th Cir. 2006) (en banc). The Trust attaches Exs. 8, 9, and 10 to its Supplemental Briefing demonstrating that the 2013 Health and Welfare Plan confers such discretion on the Trustees. Thus, the interpretation of the plan language is reviewed for abuse of discretion. *Jones v. Laborers Health & Welfare Tr. Fund*, 906 F.2d 480, 481 (9th Cir. 1990).

was sufficient to put participants and beneficiaries on notice that written notice of a change in eligibility status was required, an audit done sometime prior to publication of the 2018 Plan document demonstrated this was not always the case. *Id*. at 9-10.  Thus, amendments to the 2018 Plan document included an express provision requiring written notice of an eligibility status change. *Id*. at 10; ECF No. 11-5 at 5.[3]

The Trust next contends that, with respect to the intertwining of the COBRA notice provision in the Plan documents requiring written notice of a COBRA qualifying event, the Court "misses the point" that this requirement serves a dual purpose.  ECF No. 13 at 6.  The Trust cites plan documents attached as exhibits to its original motion and COBRA sections therein arguing that this COBRA notice requirement is a "blanket requirement" pertaining to written notice of a "qualifying event." *Id*.  This argument was not addressed by the Trust in its moving papers.

The Code of Federal Regulation at 29 C.F.R. § 1590.606-1(a) states: "*General.* Pursuant to section 606(a)(1) of the Employee Retirement Income Security Act of 1974, as amended (the Act), the administrator of a group health plan subject to the continuation coverage requirements of part 6 of title I of the Act shall provide, in accordance with this section, written notice to each covered employee and spouse of the covered employee (if any) of the right to continuation coverage provided under the plan."  Section 1590.606-1(c)(3) of this Code describes the required content of notice, including: "[a]n explanation of the plan's requirements regarding the responsibility of a qualified beneficiary to notify the administrator of a qualifying event that is a divorce, legal separation, or a child's ceasing to be a dependent under the terms of the plan, and a description of the plan's procedures for providing such notice."  The Trust then states that "[t]here would be no reason for two different notices" because (1) the written notice requirement under COBRA was sufficient for all purposes, and (2) that a "dual track system of notice is an untenable interpretation" that could

---

[3] The Trust contends that the Court erroneously applied an affirmative defense (comparative negligence) to determine if default judgment is proper. ECF No. 13 at 10-11.  There is no mention of negligence or comparative negligence in the Court's Order requesting supplemental briefing and, to the extent Plaintiff reads the Order to apply such reasoning, Plaintiff is mistaken.  The Court's concern was solely with the actual language of the 2013 Plan document and Plaintiff's failure to address the obvious issue arising from the absence of a written notice requirement to effectively change the eligibility of a participant or beneficiary.  Plaintiff also failed to address the fact that the 2018 Plan document contains an express written notice requirement suggesting a change in the notice requirement.  Further, the Trustees did not mention, let alone argue, the "harmonious" interpretation by the Trust of the COBRA and eligibility provisions in their original briefing.

lead a plan participant to wrongfully prevent a divorced spouse from exercising COBRA rights after orally shutting off the divorced spouse's health coverage. ECF No. 13 at 6-7. The Trust says that because a divorced spouse cannot seek COBRA coverage until written notice is given in accordance with Health and Welfare Plan requirements, this single written notice requirement is properly read in harmony with the requirement that a change in dependent eligibility must also be provided in writing. *Id*. at 7. The Trust concludes that this interpretation of the 2013 Health and Welfare Plan was not an abuse of discretion. *Id.*

In support of Plaintiff's position, the Trust's supplemental briefing includes the Declaration of Melissa Kollman who has been the Executive Director of the Employee Painters' Trust since October 2016. ECF No. 13-1. Ms. Kollman states that she is "familiar with the actual operation of the Trust dating back to September 1998" and, for this reason, she can testify to the "Trustees' interpretation of the Plan Document and the Trust's actual administrative practices respecting dependent eligibility and enrollment and the obligation of participants and beneficiaries to notify the Trust when certain changes in dependent eligibility status occurs." *Id.* ¶ 4. Ms. Kollman further states that the Trust, "at least as far back as 2007, require[d] a participant or beneficiary provide written notification to the Trust when there were changes to a [sic] enrolled dependent's eligibility status . . ." *Id*. ¶ 5. Ms. Kollman attaches the 2007, 2009, and 2013 Health and Welfare enrollment forms to her declaration, each of which requires a plan participant to "complete and return an Enrollment Form" whenever there is a change to family status, such as divorce. *Id*. ¶¶ 6-8; ECF Nos. 13-2 at 2; 13-3 at 2; 13-5 at 66. Each form also has a box to check to delete a family member because of a divorce. *Id.* Only the 2007 enrollment form states that if eligibility changes due to a divorce, the participant should provide a copy of the divorce decree. ECF No. 13-2 at 2.

Ms. Kollman confirms that the Trustees have consistently required written notice of dependent eligibility in harmony with the written COBRA notification requirement. ECF 13-1 ¶ 10. Ms. Kollman confirms that a uniform interpretation of the written notification requirement under COBRA, as applicable to a change in benefit eligibility, "informs the Trust of all information required to conclude both a qualifying event has occurred and that a dependent who experienced the qualifying event is no longer eligible for coverage under the Plan" absent a COBRA election. *Id*.

The Trust concludes that because there is contemporaneous evidence that the Trustees have required written notification of a divorce be provided to the Plan for the dual purpose of determining continuing eligibility to participate in benefits and the commencement of eligibility for COBRA, the Court should defer to this interpretation.

The Trust also makes a case for the conclusion that Defendants should not have been submitting claims to be paid by the Health and Welfare Plan when they knew they were divorced and, under the 2007 and 2013 Plan documents, knew a divorced spouse was not an eligible participant in the Health and Welfare Plan. ECF Nos. 11-3 at 18; 11-4 at 5 ("**DEPENDENTS NOT ELIGIBLE …** Your divorced or legally separated spouse") (emphasis in original); ECF No 13 at 11. The Trust notes that even if Defendants believed that oral communication provided in March 2017 regarding the divorce was sufficient to put the Trust on notice that Cominsky was no longer eligible to participate in benefits, Defendants should still have questioned why benefits were paid on Cominsky's behalf from September 2017 through July 9, 2018. ECF No. 13 at 11. The Trust concludes that whether Defendants "intended specifically to capitalize on any Trust error …, it was still wrongful of them to keep the benefits" to which they knew they were not entitled. ECF No. 13 at 11-12.

Despite the Trust's admission that participants and beneficiaries were not clearly understanding" the written notice requirement for a change in eligibility status, the Court agrees with the Trust's arguments for three reasons. First, the evidence now presented defies a finding that the decision with respect to Defendants was either arbitrary or capricious. The decision to require written notification of a change in benefit eligibility, while not explicitly required by the 2013 Plan document, is consistent with the requirement under COBRA as it appears in the Plan and ensures the Plan has all the information needed to determine eligibility and COBRA rights efficiently. Second, the interpretation is reasonable as now explained in the Trust's supplemental briefing. Third, the interpretation was obviously made in good faith and not for any illicit or improper purpose. Thus, the Court finds that the Trust has met its obligation of demonstrating the merits of its claims

and that there is no question of material fact (the second and fifth elements of the *Eitel* test) that warrants denial of Plaintiff's Motion. Instead, these findings militates in favor of granting default judgment in favor of the Trust.

> 3.  *The remaining Eitel elements—the sum of money at stake in the action, whether the default was due to excusable neglect, and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits—lead to granting Defendant's Motion.*

Plaintiff seeks a total of $37,828.12 in health benefits paid on behalf of Cominsky to which she was not entitled. This liquidated amount is supported by substantial evidence provided by the Trust including medical billing records and a summation of the same. ECF No. 11-6 and 4. 11-8. The Trust also seeks prejudgment interest in the amount of $1,094.36,[4] and attorney's fees and costs in the amount of $6,149.15, incurred as a result of prosecuting this matter.[5] The Court finds these amounts reasonable and that Ninth Circuit law militates in favor of a judgment totaling $45,071.63.

Obviously, Defendants have failed to appear or participate in any manner in this dispute that commenced because Cominsky received medical benefits that she and her ex-husband knew or clearly should have known she was not entitled to receive. Defendants have not argued, nor is there any evidence to suggest, that their failure to participate is the result of excusable neglect. Whether Defendants can satisfy the judgment is unknown, but deterring others from acting in the same manner as Defendants weighs heavily in favor of the award requested. Finally, recouping fees, costs, and interest puts the Trust in virtually the same position it would have been in had Defendants not wrongfully obtained medical benefits. This outcome benefits the Health and Welfare Plan and its continuing participants overall.

All the *Eitel* factors weigh in favor of granting Plaintiff's Motion for Default Judgment within the exception of the general and overall public policy favoring decisions on the merits of a case. Under the circumstances present here, this is not a good reason to deny Plaintiff's Motion.

---

[4] The award of prejudgment interest to an ERISA plan plaintiff is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir. 1985).

[5] *See* 29 U.S.C. § 1132(g)(1); *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 589 (9th Cir. 1984); *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980) for statutory and Ninth Circuit law regarding the award of fees and costs to an ERISA plan.

### III. REPORT AND RECOMMENDATION

Accordingly, and for each and all of the reasons stated above, the Court recommends that Plaintiff's Motion for Default Judgment be granted against Defendants jointly and severally in the total sum of $45,071.63.

DATED: January 16, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. In 1985, the Supreme Court held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

9